# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CRIMINAL NO. 11-CR-30162-WDS-1 |
| ) | |
| RICHON SAYLES, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM & ORDER

**STIEHL, District Judge:**

Before the Court is defendant Richon Sayles' motion to suppress the video (and audio) recorded statement he made on January 5, 2011, to Special Agent Michael E. Rehg ("S/A Rehg") (Doc. 27).[1] The Court held a hearing on January 13, 2012, at which both the defendant and the government stated that they had no evidence to present to the Court beyond the previously submitted motion (Doc. 27), and response thereto (Doc. 29), which included a copy of the DVD recording of defendant's statement. At the hearing, the Court gave the parties ten (10) days to submit supplemental briefs, if they so desired, for the Court to consider before ruling on defendant's motion. Neither party submitted additional briefs.

### BACKGROUND

Defendant Richon Sayles was charged by a grand jury with: Count (1) distribution of 28 grams or more of cocaine base in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(B)(iii); Counts

---

[1] Defendant's motion to suppress was filed out of time, but the government did not oppose the Court's consideration of the late motion. The Court found that good cause was shown for defendant's late filing (Doc. 37), and granted defendant's motion for leave to file the motion to suppress out of time (Doc. 26).

(2-4) distribution of cocaine base in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(C); and Count (5) possession with intent to distribute cocaine base in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(C).

According to defendant, on January 5, 2011, S/A Rehg conducted a video-recorded interview with defendant, after he had been informed he was under arrest. Defendant asserts that during the interview, S/A Rehg started to read defendant his *Miranda* rights, but was interrupted by the defendant when he stated he had used PCP that morning. Defendant claims that S/A Rehg then started questioning defendant about his drug use, never completed the *Miranda* warnings, and proceeded to question defendant. Defendant asserts that he never waived his rights, and asks this Court to suppress the statement made on January 5, 2011, because it was not voluntary and was made in violation of his constitutional rights.

In its response to defendant's motion to suppress, the government asserts that defendant was read the full *Miranda* warnings and he stated that he understood, and therefore, there was no *Miranda* violation. The government asserts that on the date the recorded interview was conducted by S/A Rehg, DEA agents had arranged a controlled purchase of crack cocaine involving the defendant and a confidential informant. That day, prior to the purchase, DEA Agents surveilled defendant's known residence, watched him leave his known residence and drive directly to the location of the controlled purchase, and arrested him immediately thereafter. Defendant was then taken to the DEA office where he participated in the video-recorded interview.

The government submitted the recorded interview to the Court, and directs the Court's attention to the four minute mark, at which time S/A Rehg read full *Miranda* rights to defendant. At this point, defendant stated that he had smoked PCP earlier that day and was high. At the five

minute mark, S/A Rehg asked the defendant if he understood his rights, and defendant answered affirmatively. The defendant then told S/A Rehg that prior to his arrest he had been driving around East St. Louis, stopped and bought PCP, and smoked it. The government asserts, however, that defendant's statement is contradicted by the observations of the agents. The unrefuted evidence in the record is that on the morning in question, agents observed defendant leaving his known residence to travel to the location of the controlled purchase, during which he made no other stops, and therefore the government asserts that defendant's claim that he had gone out and bought and smoked PCP is not credible.

The government next directs the Court's attention to the thirty-one minute mark of the recording, at which point S/A Rehg asked the defendant if he remembered that he had been read his *Miranda* rights, and whether he fully understood those rights, to which defendant responded affirmatively to both questions. Based upon these facts and the recording submitted to the Court, the government asserts that defendant was read his full *Miranda* rights, and defendant's statement was not otherwise involuntary or coerced. The government further asserts that even if the statement is suppressed, it should be admissible for impeachment purposes.[2]

The three issues before the Court, therefore, are: (1) whether defendant received complete *Miranda* warnings; (2) whether defendant waived his *Miranda* rights; and (3) whether defendant's recorded statement was voluntary.

---

[2] Notably, in their response to defendant's motion (Doc. 29), and at the hearing, the government asserted that it did not intend to present defendant's recorded statement in its case in chief, but would only use the statement as needed as rebuttal evidence, should the defendant testify at trial inconsistently with his statement.

## LEGAL STANDARD

According to *Miranda v. Arizona*, 384 U.S. 436, 444 (1966):

> [p]rior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed. The defendant may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly and intelligently.

"A waiver can be either express or implied, . . . and is involuntary if the will of the defendant 'was overborne in such a way as to render his confession a product of coercion'" *United States v. Upton*, 512 F.3d 394, 399 (7th Cir. 2008), *quoting Spano v. New York*, 360 U.S. 315, 320-21 (1959) (internal citation omitted). Voluntariness of a waiver of *Miranda* rights is evaluated by considering the totality of the circumstances. *See Upton*, 512 F.3d at 399. In determining whether coercion occurred, the Court can consider "things like 'the defendant's age, education, intelligence level, and mental state; the length of the defendant's detention, the nature of the interrogations; the inclusion of advice about constitutional rights; and the use of physical punishment, including deprivation of food or sleep.'" *United States v. Carson*, 582 F.3d 827, 833 (7th Cir. 2009) *quoting United States v. Huerta*, 239 F.3d 865, 871 (7th Cir. 2001). "Narcotics, alcohol, and fatigue also may be considerations in a particular case." *United States v. Vallar*, 635 F.3d 271, 282 (7th Cir. 2011).

The Seventh Circuit has upheld a voluntary waiver where a defendant refused to sign an acknowledgment form after he was read his rights, but where the defendant told officers that he understood his rights and, freely discussed allegations against him, and after giving a statement, asked for an attorney. *See Upton*, 512 F.3d at 399. The Court concluded that the defendant "understood what the officers had told him, but cooperated nonetheless, waiving his *Miranda* rights." *Id.*

4

## ANALYSIS

Upon careful review of the video recording of defendant's interview with S/A Rehg, the Court **FINDS** that defendant was given full *Miranda* warnings. The video recording shows S/A Rehg explaining to defendant that he is a DEA agent, that defendant had been arrested, and then explaining to defendant that he has a right to remain silent, that anything he says can be used against him in Court, that he has a right to talk to a lawyer before any questions are asked of him, and has a right to have a lawyer with him during questioning, if he can't afford a lawyer, one will be appointed for him before he is asked any questions if he desires. After listening to his rights, defendant confirmed that he reads, writes, and understands English, but then stated that he was high from smoking PCP. Although defendant made this statement, he also confirmed to S/A Rehg that he understood what S/A Rehg was saying to him. S/A Rehg then told defendant to ask him if there was anything that defendant did not understand. Defendant proceeded to tell S/A Rehg that he picked his kids up for school in the morning, took them to school, then bought and smoked two cigarettes which had been "dipped" in PCP, after which he proceeded to drive around until he ended up at the location of his arrest.

S/A Rehg then told defendant that he, with his own eyes, had been watching defendant all morning, saw him leave the residence where he had been staying, get in a van, and drive directly to the location of the drug deal. In other words, S/A Rehg's version of events contradicts defendant's claim that he had stopped to buy and then smoke PCP that morning. Defendant then claims that he might be confused from smoking PCP. Later in the interview, defendant again claims that he may be a little confused as a result of smoking PCP. The Court observed from the video recording, however, that defendant did not appear in any way incoherent or unable to understand anything that

S/A Rehg asked or told him.  Defendant, in fact,  made a coherent decision not to give consent for his residence to be searched, based upon his claim that the residence was not his.

Furthermore, at one point in the recording, the interview stopped and then started again, and S/A Rehg stated that a few hours had passed since they had last spoken with defendant.  Defendant stated that he was still high, but answered S/A Rehg affirmatively when S/A Rehg asked defendant whether he remembered what happened before when they talked, whether he remembered that S/A Rehg had read him his rights, and whether he fully understood his rights.  Furthermore, defendant requested that he be allowed to make phone calls to ensure that each of his children was picked up from school on time, which S/A Rehg allowed him to do.  The Court notes that defendant had the presence of mind and coherence to concern himself with arrangements for his children, and to make phone calls to ensure they were picked up.

Defendant did not sign a waiver (nor is there any indication that he was asked to do so), but stated that he understood his rights and continued to answer the questions of S/A Rehg, and never requested the assistance of an attorney.  Although the Court may consider a number of factors regarding the voluntariness of defendant's statement, (*see Carson*, 582 F.3d at 833), the defendant, in his motion, did not claim any specific circumstance which may have made his statement involuntary, besides alluding to the fact that he made the statement that he had smoked PCP on the morning of the recorded interview.

The Court may consider the use of narcotics in its determination of whether the defendant voluntarily waived his *Miranda* rights.  Notably, "a defendant's intoxication . . . by itself–without some showing of coercion by the government–will not negate voluntariness." *United States v. Chrismon*, 965 F.2d 1465, 1469 (7th Cir. 1992).  In fact, "[a] diminished mental state is only

relevant to the voluntariness inquiry if it made mental or physical coercion by the police more effective." *Id*. "When the interrogating officers should reasonably have known that a suspect was under the influence of drugs or alcohol, 'a lesser quantum of coercion may be sufficient to call into question the voluntariness of the confession.'" *Carson*, 582 F.3d at 833-34 *quoting United States v. Haddon*, 927 F.2d 942, 946 (7th Cir. 1991).

Here, even assuming that defendant's statement that he was high from smoking PCP was true and credible, the defendant made no showing whatsoever of coercion, nor did the Court's viewing of the recorded statement reveal any indication of coercion. The Court **FINDS**, therefore, that defendant was read his full *Miranda* rights, that he understood those rights, that he voluntarily waived his *Miranda* rights, and even if defendant was high on PCP, there was no showing of coercion to call into question the voluntariness of the statement or waiver.

## CONCLUSION

Accordingly, defendant's motion to suppress (Doc. 27) defendant's video recorded statement made on January 5, 2011, is **DENIED**.


**IT IS SO ORDERED.**

**DATE:   February 10, 2012**

                                      **/s/  WILLIAM D. STIEHL**
                                          **DISTRICT JUDGE**