# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CRIMINAL NO. 11-CR-30162-WDS-1 |
| ) | |
| RICHON SAYLES, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM & ORDER

**STIEHL, District Judge:**

Before the Court is the government's motion for compensation (Doc. 52). The Court held a hearing on this motion on March 21, 2012, and heard arguments from the government and defendant, and heard testimony from defendant's witness, Narva Sayles. The Court allowed the defendant to submit additional caselaw by March 22, 2012.[1] The government filed its response on March 23, 2012 (Doc. 58).

### BACKGROUND

On October 14, 2011, defendant signed a CJA 23 financial affidavit (Doc. 9) certifying under penalty of perjury that he: was not employed and had not been employed since 2008; had received $2400 in food stamps in the 12 months preceding his detention; had no cash on hand or money in savings or checking accounts; owned no real estate, stocks, bonds, notes, automobiles, or other valuable property (excluding ordinary household furnishings and clothing); was single and had no

---

[1] On March 21, 2012, defendant submitted, via email, to the Court's proposed documents email address, and via email to Mr. Donald Boyce, Assistant United States Attorney's, the caselaw citation for *United States v. Crosby*, 602 F.2d 24, 27-28 (2d Cir. 1979).

dependents; and was paying rent in the amount of $350 per month.

On October 14, 2011, Magistrate Judge Proud found that defendant was financially unable to obtain counsel, was in need of counsel, was entitled to the appointment of counsel, and appointed the Federal Public Defender ("FPD") (Doc. 10) to represent the defendant in this matter. Thomas Gabel, Assistant FPD, entered his appearance on defendant's behalf on October 17, 2011 (Doc. 19). On February 16, 2012, Mr. Gabel filed a motion to withdraw as attorney for defendant (Doc. 46) based on complete deterioration of the relationship to the point that effective communication was impossible. On February 17, 2012, the Court granted Mr. Gabel's motion to withdraw, and appointed Brian K. Trentman as a CJA appointment, based on the fact that defendant was financially unable to obtain counsel (Doc. 47). On March 13, 2012, Mr. Rosenblum and Mr. Fein entered appearances on behalf of defendant (Docs. 50, 51). On March 16, 2012, Mr. Trentman filed a motion to withdraw (Doc. 55) based on the appearances filed by private counsel, which this Court granted on March 19, 2012 (Doc. 56).

In its motion for compensation (Doc. 52), the government requests that the Court order defendant to immediately reimburse the FPD's Office for services rendered, and further order that the defendant compensate the Court for all payments that have been, and will be, paid to CJA panel attorney Brian K. Trentman.

### LEGAL STANDARD

Under 18 U.S.C. § 3006A(f):

Whenever the United States magistrate judge or the court finds that funds are available for payment from or on behalf of a person furnished representation, it may authorize or direct that such funds be paid to the appointed attorney, to the bar association or legal aid agency or community defender organization which provided the appointed attorney, to any person or organization authorized pursuant to

> subsection (e) to render investigative, expert, or other services, or to the court for deposit in the Treasury as a reimbursement to the appropriation, current at the time of payment, to carry out the provisions of this section. Except as so authorized or directed, no such person or organization may request or accept any payment or promise of payment for representing a defendant.

Before requiring a defendant to pay funds pursuant to § 3006A(f), the Court must find that funds are "available" under the statute. *United States v. McGiffen*, 267 F.3d 581, 589 (7th Cir. 2001). The type of findings which are necessary include, "whether requiring the contribution would impose an extreme hardship on the defendant, whether it would interfere with his obligations to his family, and whether there were third parties with valid claims to the funds." *Id.*

The Court may consider funds from family members as "available" funds based on the plain wording of the statute, specifically stating that the Court may direct that funds are paid by defendant if the Court finds that funds are available "from or *on behalf of* a person furnished representation." 18 U.S.C. 3006A(f); *see United States v. Standiford*, 148 F.3d 864, 870 (7th Cir. 1998).

Furthermore, the Seventh Circuit has noted in dicta that courts are encouraged to use their authority under § 3006A(f) to require a defendant to reimburse the appropriate party for costs it has incurred where a defendant has shown he could afford to mount his own defense. *United States v. Lindsay*, 157 F.3d 532, 534 (7th Cir. 1998).

The Second Circuit, in *Crosby*, held that money already paid to an attorney "was not 'available' within the meaning of s 3006A(f)," reasoning that "the statute cannot reasonably be read to include funds that have been paid unconditionally to a third party." 602 F.2d 24, 28 (2d Cir. 1979). The *Crosby* Court noted that the defendant's mother, who paid the retainer to hire an attorney for her son, "was never willing to make money directly available to Crosby," but only to bring an attorney into the case. *Id.* at 29.

3

## ANALYSIS

At the hearing, the government incorporated the contents of its motion, and expounded on the motion by asking the Court to follow the Seventh Circuit's encouragement in *United States v. Lindsay*, 157 F.3d 532, 534 (7th Cir. 1998), to order defendant to pay back funds for his representation in that he now has funds available to pay private counsel. The government argued that the Court in *Lindsay* showed displeasure at the fact that funds became available on the eve of trial, while all of the pretrial representation was provided to defendant free of charge. The government also argued, that from a policy standpoint, allowing defendants to proceed in this manner depletes the funds of the public defender and could also lead to delay based upon the late appearance of a new attorney on the eve of trial. The government did not assert that Mr. Sayles falsified his financial affidavit, but argued that the fact that Mr. Sayles can retain counsel at this point shows that he has funds available.

The defendant, on the other hand, argued that the *Lindsay* case merely includes dicta which did not relate to the holding of the case. Further, the defendant made two specific arguments: (1) defendant has no funds and has never had any, and is in fact, indigent, and (2) the funds are not available because they have already been used to retain counsel. Defendant argued that the critical issue before the Court is whether there are funds available, meaning that they are not already being used in some way. The defendant cited a Second Circuit case, *United States v. Crosby*, 602 F.2d 24, 27-28 (2d Cir. 1979) to support his position that the Court should not take money away from a firm that was paid to represent the defendant in order to compensate the FPD or CJA attorney. Defendant's counsel conceded that funds were paid on behalf of the defendant, but that those funds are simply not "available" under the statute.

Defendant called one witness, defendant's aunt, Narva Lee Sayles, who testified at the hearing that she contacted her 13 sisters and brothers, and her nephews, none of which are wealthy, and asked them to contribute whatever they could over approximately five (5) months in order to hire private counsel for Mr. Sayles. Defendant's counsel pointed out that private counsel was hired at this late date, essentially right before trial, not because defendant was trying to "sandbag" the Court, but because that is how long it took for a family without substantial financial resources to come up with the requisite amount of money.

The Court must first consider whether the defendant has funds available within the meaning of 18 U.S.C. § 3006A(f). On two previous occasions the Court has determined, based on defendant's financial affidavit, that defendant was financially unable to obtain counsel. The government does not challenge the truthfulness of defendant's financial affidavit, and the Court was given no indication that defendant's personal financial situation had changed.

Here, defendant's family members, upon learning that defendant was unhappy with the representation he received from his appointed attorneys, decided that they wanted to help him hire private counsel. Defendant's aunts and uncles collected money amongst themselves over the course of five (5) months until they could save enough money to retain private counsel. The Court heard testimony from defendant's aunt explaining these facts, and the Court was given no reason to doubt the truth of her testimony.

Based upon the facts and particular circumstances of this case, it is not one in which it appears that the defendant was attempting to take advantage of "free" pre-trial counsel and then reveal finances that could be used for trial, as the government alluded. The timing of defendant's retainer of private counsel, in this case, was directly related to the fact that it took some time for

5

families of modest means to come up with enough money to retain counsel. This case is distinguishable from the *Lindsay* case, in that there is no showing here that Mr. Sayles could "clearly afford" to mount his defense on his own. 157 F.3d at 534. The Seventh Circuit did not parse out the details regarding defendant Lindsay's ability to retain counsel on the eve of trial, but merely stated that courts are encouraged to use their statutory authority to order reimbursement where it is clear that the defendant could have afforded to mount his own defense. *Id.* In the particular circumstances before this Court, it is clear that defendant could not have afforded to retain an attorney at the outset of the case, nor that he could do so presently.

The Court agrees with defendant, that this case is factually closer to *Crosby*, where the Second Circuit found that a $9,500 retainer paid to a private attorney by the defendant's mother was not available from or on behalf of the defendant. 602 F.2d at 29. Here, the money raised by defendant's family was used to retain counsel, and is therefore not "available" within the meaning of the statute for this Court to direct its allocation to the FPD or the Court. The government did not claim that defendant falsified his financial affidavit, nor did any facts come to light that any other funds of any kind were "available" to the defendant. The Court, therefore, **FINDS** that the defendant did not have funds or other resources available to pay for his representation at the outset of his case, and does not now have funds available for the Court to distribute within the meaning of 18 U.S.C. § 3006A(f).[2]

## CONCLUSION

Accordingly, the government's motion for compensation (Doc. 52) pursuant to 18 U.S.C.

---

[2]The Court need not consider defendant's possible defenses because it did not find that any funds are available in this case. However, the Court could reasonably conclude that requiring defendant to pay for his previous representation would impose extreme hardship on the defendant.

§ 3006A(f) is **DENIED**.


**IT IS SO ORDERED.**

**DATE:  March 26, 2012**

                                                        **/s/  WILLIAM D. STIEHL**
                                                               **DISTRICT JUDGE**