# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CRIMINAL NO. 11-CR-30162-WDS-1 |
| ) | |
| RICHON SAYLES, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM & ORDER

**STIEHL, District Judge:**

Before the Court is defendant Richon Sayles' motion to suppress any and all evidence seized in connection with defendant's detention and arrest on January 5, 2011, by members of the Drug Enforcement Agency ("DEA"), the Fairview Heights Police Department, and by any other law enforcement personnel, including all evidence seized from defendant's person and clothing, from his vehicle, and from a residence he "shared" with his girlfriend, Wydell Smith (Doc. 74). The government filed a response (Doc. 88), and the Court held a hearing on April 16, 2012 , to consider the issues raised in defendant's motion to suppress.

### BACKGROUND

Defendant Richon Sayles was charged by a grand jury with: Count (1) distribution of 28 grams or more of cocaine base in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(B)(iii); Counts (2-4) distribution of cocaine base in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(C); and Count (5) possession with intent to distribute cocaine base in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(C).

The record reveals that on January 5, 2011, defendant was arrested following a controlled

buy conducted by the DEA. According to the DEA-6 report, the agents observed the defendant in a van parked outside the barbershop where co-defendant Robert Griffin ("Griffin") worked. Griffin allegedly spent time in the vicinity of defendant's vehicle just before and just after Griffin's interaction with the confidential source ("CS"). The DEA agents reported that previous investigation had established that defendant was Griffin's source of supply, and that they had observed defendant's presence during previous narcotics transactions between the CS and Griffin.

After the interaction between Griffin and the CS on January 5, 2011, the CS left the parking lot and met with agents, and soon thereafter, Sayles was stopped by law enforcement, secured in handcuffs, and transported from the scene. The DEA-6 report states that an officer removed defendant's van from the roadway and transported it to the FHRO for a search of the vehicle incident to arrest. The report further states that the van's exterior and interior were damaged, including loose door panels and dash panels, and a partially pulled away head liner on the roof area above the passenger and driver sides of the vehicle. TFO Rohlfing located a plastic bag containing a purple tablet above the driver's head area, under the head liner, and SA Rehg located two plastic bags containing a substance believed to be crack cocaine, although the report does not indicate where these bags were found. Defendant claims that prior to his arrest, his vehicle's door panels, dash panels, and head liner were not damaged, and that the damage occurred when agents searched his vehicle.

According to defendant, after his arrest, agents also searched a residence "characterized" by agents as defendant's residence, after obtaining permission and a signed consent form from defendant's girlfriend, Wydell Smith ("Smith"). As a result of the search of the residence, agents seized marijuana, currency, cocaine, a scale, and ammunition. Defendant claims that any consent

2

given by Smith was only given as a result of significant coercion by agents.

Finally, in the course of defendant's arrest and release from the Fairview Heights Police Department, officers seized items from defendant's person and clothing, including currency.

Defendant challenges the admission of any and all evidence seized in connection with his detention and arrest on January 5, 2011, based upon his contentions that: (1) his detention and arrest were illegal because they were made without warrant, without consent, and without lawful authority; (2) any subsequent searches of defendant's vehicle, person, or clothing were tainted by the illegality of his detention and arrest; (3) the search of defendant's vehicle was executed without a warrant, without probable cause, without lawful authority, and was not justified pursuant to exigent circumstances, a search incident to arrest, a lawful inventory search, or any other exception; and (4) the search of the residence was illegal because defendant did not consent to the search of the residence, Smith did not voluntarily consent to the search, but was coerced by agents, and the search was executed without a warrant, without probable cause, without lawful authority, and was not justified pursuant to any exception.

## ANALYSIS

### I. Legality of Defendant's Arrest and Detention

Defendant asserts that his arrest and detention were illegal because they were made without a warrant, without consent, and without lawful authority. Defendant provides absolutely no support, legal or factual, through affidavits, evidence, testimony, or otherwise, to support this particular assertion. Without a showing of illegality, the government asserts that the Court need not even entertain this claim, citing *United States v. Randle*, 966 F.2d 1209, 1212 (7th Cir. 1992), which provides that "[a] defendant who seeks to suppress evidence bears the burden of making a prima

facie showing of illegality." The Court gave the defendant the opportunity to present any such evidence at the hearing, but the defendant provided nothing more than the cross-examination testimony of Special Agent Rehg, which did not provide support for defendant's allegation of illegal arrest or detention.

The government further asserts that defendant's arrest on January 5, 2011, was "undisputably" supported by probable cause because officers observed four controlled drug transactions involving the defendant before arresting him. On each of the four occasions a CS contacted Griffin to purchase crack; the CS went to Twins Barbershop to meet with Griffin and purchase crack; a tan van bearing license plate number K880209 arrived at the barbershop; Griffin met with the driver of the van and then delivered a package from the driver of the van to the CS, which was later confirmed to be crack; the CS gave Griffin recorded "buy money" provided to the CS by law enforcement; and, Griffin would, after the CS paid for the crack cocaine, return to the van and meet with the driver. Law enforcement identified the defendant as the driver of the van after the first buy on August 3, 2010, and identified him as the driver of the van at each of the following three drug transactions. On the date of defendant's arrest, officers watched the above described events occur, received confirmation from the CS that a drug transaction occurred, and then followed the defendant as he drove away from the barbershop. His car was stopped and the defendant was arrested.

A warrantless arrest of an individual is consistent with the Fourth Amendment if officers "have probable cause to believe that the person committed a crime" *United States v. Mosby*, 541 F.3d 764, 767 (7th Cir. 2008) (citing *Maryland v. Pringle*, 540 U.S. 366, 370 (2003)). Police have the requisite probable cause if "the circumstances known to the officers would justify a prudent

4

police officer's belief that [the defendant] had committed a crime." *Id*. Stated another way, "[p]robable cause exists when, at the time of arrest, the arresting officer possesses 'knowledge from reasonably trustworthy information that is sufficient to warrant a prudent person in believing that a suspect has committed, or is committing a crime.'" *United States v. Villegas*, 495 F.3d 761, 770 (7th Cir. 2007) (quoting *United States v. Breit*, 429 F.3d 725, 728 (7th Cir. 2005)). The Court assesses "the determination of probable cause for a search or an arrest under the commonsense 'totality of the circumstances' analysis established in *Illinois v. Gates*, 462 U.S. 213 (1983), which requires us to decide 'whether, given all of the circumstances set forth . . . , there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Oliva*, 385 F.3d 1111, 1114 (7th Cir. 2004) (quoting *Illinois v. Gates*, 462 U.S. at 238).

The Seventh Circuit has also confirmed its ruling in *United States v. Navarro*, 90 F.3d 1245, 1254-55 (7th Cir. 1996), "that probable cause existed to stop a defendant's vehicle based on information, received from a confidential informant, that law enforcement officers had corroborated by observing the defendant's activities." *United States v. Huebner*, 356 F.3d 807, 815 (7th Cir. 2004). The court determined that the detailed and corroborated information regarding a defendant's drug dealing activities from a known confidential informant lead to the officers' reasonable conclusion that there was a "fair probability" that narcotics would be found in the defendant's vehicle when he was stopped, and that accordingly, the officers had probable cause to stop, arrest, and search the defendant and his vehicle. *Id.* at 816.

In this case, defendant's arrest was certainly supported by probable cause: officers witnessed defendant's presence at the scene of four controlled drug transactions, and in the course of each transaction, the CS contacted Griffin, and Griffin met with the defendant directly before and directly

5

after the delivery of drugs, later confirmed to be crack, to the CS. The officers identified the defendant as the driver of the van after the first buy, and at the following three controlled purchases. Special Agent Rehg testified that on the date of defendant's arrest, he watched the defendant leave the residence at 812 N. 74th Street, go to the barbershop, meet with Griffin, after which the CS purchased crack, and then Griffin returned to defendant's van. After observing this transaction take place, and observing nearly identical transactions on at least three previous occasions on August 3, 2010, August 11, 2010, and September 17, 2010, the agents decided, based on their observations and information available to them, to arrest the defendant. The officers undoubtedly had the requisite probable cause to arrest the defendant under all of the circumstances present. They had received information from a CS, which was corroborated by the officers' own observations on multiple occasions. The officers here reasonably concluded that there was at least a fair probability that contraband would be found in defendant's vehicle when he was stopped, and the Court **FINDS**, therefore, that the officers had probable cause to stop, arrest, and search the defendant and his vehicle.

Because defendant's arrest and detention were supported by probable cause, and therefore legal, defendant cannot claim that any of the evidence procured from the searches following his arrest were "tainted" by an illegal arrest.

## II. Legality of the Search of Defendant's Person or Clothing

After an individual is lawfully arrested, "[s]earches incident to arrests are valid in order to find weapons and to search for and seize any evidence on the arrestee's person in order to prevent concealment and to preserve evidence for trial." *United States v. Thomas*, 512 F.3d 383, 387 (7th Cir. 2008). Furthermore, "a full search of the person is not only an exception to the warrant

6

requirement of the Fourth Amendment, but is also a reasonable search under that Amendment." *Id*. The Seventh Circuit has been abundantly clear on this topic, and has noted "the bright-line rule that police are entitled to search the persons and possessions of everyone arrested on probable cause, with or without any reason to suspect that the person is armed or carrying contraband." *United States v. Jackson*, 377 F.3d 715, 716 (7th Cir. 2004). In other words, "it is reasonable for the police to search the body, clothing, and immediate possessions of anyone in custody following an arrest on probable cause." Id.

Based upon the Court's finding that defendant's arrest was supported by probable cause, and that defendant provided no evidence whatsoever in support of its assertion that the searches of defendant's person and clothing were illegal, the Court **FINDS** that the searches of defendant's person and clothing were legal, and **DENIES** the defendant's motion to suppress evidence seized as a result of these searches.

### III.     Legality of the Search of Defendant's Vehicle

Where law enforcement officers have probable cause to believe an individual was transporting drugs in a vehicle, the officers have a sufficient basis to search the vehicle without a warrant. *United States v. Clark*, 657 F.3d 578, 582 (7th Cir. 2011). "If the police have probable cause to search a vehicle for drugs, they may look anywhere drugs could be stashed." *Id*. at 583. The Seventh Circuit has further explained:

> Under *Carroll v. United States*, 267 U.S. 132 (1925), and its progeny, a vehicle may be searched without a warrant if there is probable cause to believe it contains contraband or evidence of a crime, and this type of search "lawfully extends to all parts of the vehicle in which contraband or evidence could be concealed, including closed compartments and trunks." *United States v. Patterson*, 65 F.3d 68, 70 (7th Cir. 1995) (internal quotation marks omitted). Probable cause to conduct a search of this type exists if, given the totality of the circumstances, there is a "fair probability that contraband or evidence of a crime will be found in [the vehicle]."

7

*Illinois v. Gates*, 462 U.S. 213, 238 (1983).

*United States v. Johnson*, 383 F.3d 538, 545 (7th Cir. 2004). Defendant's reliance on *Arizona v. Gant*, 556 U.S. 332, 347 (2009) for the proposition that the search of his vehicle was unlawful is misguided. The *Gant* decision "limits the circumstances when officers may conduct a search of a passenger compartment incident to a lawful arrest," in that such a search is authorized "only when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search." *United States v. Slone*, 636 F.3d 845, 852 (7th Cir. 2011).

The *Gant* opinion went further, though, to state that in the context of a vehicle, a search incident to lawful arrest is justified "when it is reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle." *Id*. In other words, while a traffic violation will not necessarily justify a search, if evidence of the offense of arrest could reasonably be expected to be found in the vehicle, the search is justified. *Id*

In this case, the officers had just observed, for the fourth time, the defendant's presence at the scene of a controlled purchase of crack cocaine, during which the co-defendant Griffin interacted with the defendant directly before and directly after Griffin delivered the drugs to the CS. Immediately after defendant's arrest, a search of defendant's person and clothing did not reveal the "buy money," which officers later found in defendant's boot. Therefore, it was logical for the officers to believe that the buy money may have been in the vehicle. The defendant has made no showing that the search of his vehicle was illegal, besides his erroneous reliance on the *Gant* decision, and has provided no support whatsoever to support his allegation that the officers misrepresented the state of his vehicle prior to their search, or that his vehicle was damaged during the search. The Court **FINDS** that probable cause existed to search defendant's vehicle

8

because it was reasonable to believe that it contained evidence of drug trafficking, including, for example, cocaine or "buy money" used in the controlled purchase, and therefore, the search of the vehicle, including within the door panels, dash panels, and head liner, was authorized under the automobile exception to the warrant requirement. *See United States v. Stotler*, 591, F.3d 935, 940 (7th Cir. 2010). The defendant's motion to suppress any and all evidence found in defendant's vehicle is, therefore, **DENIED**.

## IV. Legality of the Search of the Residence

Defendant claimed, in a post-arrest, recorded interview with DEA Agents, that he did not live at the residence that the agents sought to search, and that he could not, therefore, consent to the search. In his motion to suppress evidence obtained from the search of the residence, defendant has not disputed this initial stance, and, as the government notes, has presented no evidence that he had a legitimate expectation of privacy in the area searched. In objecting to the search, it is his burden to prove his legitimate expectation of privacy in the area searched. *See United States v. Ruth*, 65 F.3d 599, 604 (7th Cir. 1995). More specifically, "[t]o challenge a search the defendant must show that he had both a subjective and objective expectation of privacy in the item or location searched." *United States v. Crowder*, 588 F.3d 929, 934 (7th Cir. 2009). If an individual lacks a reasonable expectation or privacy in the location searched, he does not have standing to challenge the search or subsequent seizure of items. *Id.* at 935. The Seventh Circuit has repeatedly explained that "without an affidavit or testimony from the defendant, it is almost impossible to find a privacy interest." *United States v. Mendoza*, 438 F.3d 792, 795 (7th Cir. 2006) (quoting *Ruth*, 65 F.3d at 605). Defendant has presented no evidence whatsoever to support a finding that he had a privacy interest in the residence at 812 N. 74th

9

Street, East St. Louis, Illinois. In this respect, defendant has not shown that he has standing to seek suppression of evidence obtained from a residence that he claimed was not his.

Furthermore, "[a] warrantless search does not violate the Fourth Amendment if a person possessing, or reasonably believed to possess, authority over the premises voluntarily consents to the search." *United States v. Groves*, 530 F.3d 506, 509 (7th Cir. 2008). Special Agent Rehg testified that after defendant claimed that he did not have the authority to provide consent for a search of the residence because it was not his, the officers went to the residence, knocked on the door with no weapons drawn, and spoke with Smith, who gave verbal and written consent for the residence to be searched. Special Agent Rehg testified that he did not threaten Smith in any manner, and she voluntarily signed a search consent form, which stated that she had been asked to permit special agents of the DEA to search the residence, that she had not been threatened or forced in any way, and that she freely consented to the search (Doc. 88-1). Although defendant claimed, in his motion to suppress, that Smith was coerced to consent to the search, the defendant presented no evidence or testimony from Smith herself to support this assertion.

Accordingly, the Court **FINDS** that the defendant lacks standing to challenge the search performed at the residence at 812 N. 74th Street, and that even if he could challenge the search, consent was voluntarily given by Smith, and the Court has absolutely no evidence to believe otherwise. The defendant's motion to suppress any and all evidence obtained as a result of the search of the residence at 812 N. 74th Street, East St. Louis, Illinois, is therefore, **DENIED**.

## CONCLUSION

Accordingly, defendant's motion to suppress any and all evidence seized in connection

with defendant's detention and arrest on January 5, 2011 (Doc. 74), is **DENIED** on all grounds raised.

**IT IS SO ORDERED.**

**DATE:  April 16, 2012**

　　　　　　　　　　　　　　　　　　**/s/  WILLIAM D. STIEHL**
　　　　　　　　　　　　　　　　　　　　　**DISTRICT JUDGE**